**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA
ex rel. KAREN CLARK, and STATE
OF NEW MEXICO ex rel. KAREN
CLARK, and KAREN CLARK, individually,

       Plaintiffs,

v.                                                    Civ. No. 13-00372 MV/CG

UNITEDHEALTH GROUP, INC., UNITED
HEALTHCARE INSURANCE COMPANY,
UNITED BEHAVIORAL HEALTH, INC.,
and OPTUMHEALTH NEW MEXICO,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Motion of Defendants UnitedHealth Group, Inc., United Healthcare Insurance Company, United Behavioral Health, Inc., and OptumHealth New Mexico ("Defendants") to Dismiss the Complaint with Prejudice and Memorandum in Support, filed January 22, 2016 [Doc. 32]. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be granted.[1]

**BACKGROUND**

Defendant UnitedHealth Group, Inc. provides "managed health care through various subsidiaries, operating companies, and joint ventures including Defendant United Healthcare Insurance Company, Defendant United Behavioral Health, and Defendant OptumHealth New

---

[1] Although Defendants move that the Complaint be dismissed with prejudice, the Court grants Relator leave to amend her Complaint pursuant to Fed. R. Civ. P. 15(a)(2).

1

Mexico [(OHNM)]." *Id*. ¶ 5.  Beginning in January 2009, Defendants had a contract with the State of New Mexico Interagency Behavioral Health Purchasing Collaborative ("the Collaborative"), obligating Defendants to provide behavioral health services to New Mexico residents.  *Id*. ¶ 9.  The Collaborative is made up of a series of New Mexico State agencies.  *Id*. ¶ 10.  The contract between Defendants and the Collaborative authorized Defendants to provide behavioral health services through subcontracted service providers, *id*. ¶ 12, subjected all services provided under the contract to all applicable federal and New Mexico statutes and regulations, *id*. ¶¶ 11, 13, and required Defendants to monitor subcontractors in order to ensure compliance, *id*. ¶¶ 13–14, 16.

From October 10, 2011 through April 9, 2012, Relator/qui tam Plaintiff Karen Clark ("Relator") was employed by Defendant UnitedHealth Group, Inc., as a Senior Investigator within the Special Investigations Unit (SIU) of UnitedHealth Group Inc.'s Optum Behavioral Health Solutions (OHBS).  Doc. 1 ¶ 4.  The SIU "conducted investigations of allegations of fraud and abuse for and on behalf of Defendant OptumHealth New Mexico and other OptumHealth businesses within the United States of America."  *Id*.

"All of the behavioral services which the Defendants and its subcontractors were responsible for providing under the contract were paid for by the Medicaid program administered by the New Mexico Human Services Department, and other federal and state funding sources." *Id*. ¶ 17.  Medicaid is a federally assisted grant program that enables states to provide medical assistance and related services, including behavioral health services, to individuals with limited resources.  "Under the Medicaid program, the State directly reimburses providers of behavioral health services for services actually rendered, with the State obtaining the federal share of the payment from accounts which draw on funds of the United States Treasury."  *Id*. ¶ 19.  "In

order to receive Medicaid funds, enrolled providers, together with authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the State of New Mexico." *Id*. ¶ 20.  "[F]alse claims for payment made on the New Mexico Medicaid program . . . cause false claims for payment of federal funds to be presented to an officer or employee of the federal government." *Id*. ¶ 21.

Relator claims that Defendants "billed the Medicaid program, and other programs funded by the federal and state government for behavioral health care and treatment which was not appropriately documented, documented by falsified records, provided by unlicensed providers, not medically necessary, billed using inapplicable and improper billing codes, and which was not, in fact, provided." *Id*. ¶ 30; *see also id*. ¶ 38.  The Complaint lays out in detail allegations of fraud perpetrated by nine of Defendants' subcontractors. *Id*. ¶¶ 39–160.

Relator alleges that "[a]t all material times, the Defendants knew that the claims for payment they were submitting to the Medicaid and other government funded programs and for which it was issuing payment to its above-named subcontractors were false . . . and that its subcontractors were not eligible to be reimbursed for those claims . . . which Defendants were responsible for administering on behalf of the State of New Mexico under its contract." *Id*. ¶ 36.  Nevertheless, the Complaint alleges that Defendants falsely certified in its requests for Medicaid reimbursements that its subcontractors were licensed or otherwise eligible for reimbursement, that Defendants had a functional edit system in place to identify claims that were not eligible for Medicaid reimbursement or were suspicious, that all claims submitted were accurate, within federal guidelines, and accurately reflected the care actually provided. *Id*. ¶ 164.

Relator alleges that because Defendants received twenty eight percent of every claim that was reimbursed for services provided by its subcontractors, Defendants had an economic incentive to pay or seek reimbursement, and to not deny these claims. *Id*. ¶ 32. The Complaint alleges that from October 1, 2011 until the filing of the Complaint on April 22, 2013, Defendant OHNM received and paid out to their subcontractors a total of approximately $529.5 million dollars in Medicaid funds. *Id*. ¶¶ 183–85.[2]

As a Senior Investigator, Relator's role was to investigate reports or complaints of false claims on the part of subcontracted service providers. *Id*. ¶ 4. Regarding several of the subcontractors mentioned in the Complaint, Relator alleges that she was instructed by her superiors to stop pursuing the investigation. *See id.* ¶¶ 43, 59, 73, 95, 156. The Complaint further alleges that Defendants continued to process claims for payments submitted by these subcontractors. *Id*. ¶¶ 46, 49, 75, 85, 89, 96, 109–111, 113, 123, 133, 142.

Relator claims that Defendants made efforts to conceal the non-compliance of their subcontractors, including "failing to respond to requests from the New Mexico Attorney General's office for an accounting review of [a particular] subcontractor's claims." *Id*. ¶ 52; *see also id.* ¶¶ 97, 114–15 (instructing Relator not to communicate with government officials). Relator further alleges that in two instances her superiors were aware of false claims being submitted by subcontractors. *See id*. ¶ 95 (alleging that the Chief Operating Officer of OHNM "admitted she was aware [the subcontractor] was submitting false claim[s] but that OHNM could

---

2 In her Response, Relator attaches the Contract in support of her position that Defendants had a financial incentive to submit false claims for reimbursement. Doc. 39-1. On Reply, Defendants dispute that the Contract incentivizes Defendants to pay fraudulent claims, arguing that under the Contract OHNM is compensated based on its number of enrollees and not on the amount of claims paid. Doc. 42 at 6–7. The Court declines to consider evidence outside the Complaint. *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). Furthermore, the Court does not reach the issue of whether this aspect of Relator's theory is plausible because, as discussed *infra*, the Complaint fails to satisfy the particularity requirements of Rule 9(b).

not go against [this subcontractor] because it would cause problems for OHNM with the State of New Mexico . . ."), 121–22.   Relator also claims that Defendants were aware of defects in their automated monitoring system.  *See* ¶ 90 (alleging that when Relator confronted the Chief Operating Officer of OHNM about calls received on the OHNM fraud/abuse tipline reporting false claims, she was informed that because the subcontractor "was 'a big player in the state', that OHNM already had problems with the State because its claims edit system . . . and that OHNM did not want to draw attention to themselves by going after a big provider."), 121–22 (alleging that after a subcontractor offered to pay OHNM back the difference between what it should have received and what it received using false claims, Relator "was instructed by OHNM's [Chief Operating Officer] not to report this finding to the State of New Mexico because if these claims were reported, the State would learn that OHNM's edit system did not work properly.").

Finally, Relator claims that she reported the findings of some of her investigations to governmental authorities, and that Defendants retaliated against her in response.  *See, e.g.,* Doc. 1 ¶¶ 71, 95, 149.   In one instance Relator was "verbally reprimanded" by her superiors in the SIU after reporting information regarding one subcontractor's submission of false claims to OHNM and the State of New Mexico.  *Id*. ¶¶ 71–72.   In another instance Relator forwarded complaints from a subcontractor's employees to the New Mexico Attorney General's Office and then began an investigation of the complaints.  *Id*. ¶ 149.   Three days after beginning her investigation, the SIU Director informed Relator "that she was under investigation, to stop work on her investigation of this provider, and to not speak with anyone regarding her investigation. [She] was further informed that if she did speak with anyone about [this subcontractor] she would be fired by OHNM."  *Id*. ¶ 156.   Relator was later contacted by the New Mexico

Attorney General's Office regarding the subcontractor, and Relator was told by the SIU Director not to return those calls.  *Id*. ¶ 158.   A few days later, Relator was terminated.  *Id*. ¶ 159.

Relator brings this action under the False Claims Act ("FCA") 31 U.S.C. §§ 3729 *et seq.* on behalf of the United States, as well as under the New Mexico Fraud Against Taxpayers Act ("FATA") N.M.S.A. §§ 44-9-1 2007 *et seq.* on behalf of the State of New Mexico.  Count I under Section 3729(a)(1)(A) of the FCA and the second Count III[3] under Section 44-9-3.A(1), (2), and (3) of the FATA are based on the allegations that Defendants knew the claims submitted by its subcontractors were false but nevertheless "accepted, processed and paid those claims from Medicaid funds and funds obtained from other government funding sources."  *Id*. ¶ 171–72; 196–97.   Count II under Section 3729(a)(1), (2), and (3) of the FCA claims that Defendants "presented false claims to the federal and state government when they falsely certified that they and all of their subcontractors were in compliance with Medicaid and federal grant guidelines and that its edit system was functional and working properly."  *Id*. ¶ 181.   The first Count III claims Conspiracy to Submit False Claims under Section 3729(a)(1)(c) of the FCA and is based on the allegations that Defendants "conspired to present or cause to be presented false claims for payment or approval, and to use or cause to be used false records or statements material to a false or fraudulent claim in order to obtain payment from the Medicaid program and other state and federal government funding sources."  *Id*. ¶ 188.   Finally, Count IV claims under N.M.S.A. § 44-9-11 2007 that Relator "disclosed information to the New Mexico State government and law enforcement officials regarding the submission of false claims" and that "[i]n retaliation . . . Defendant UnitedHealth Groups, Inc., threatened and harassed [Relator], and then terminated

---

[3] The Complaint lists two causes of action labeled "Count III."   The first cause of action claims Conspiracy to Submit False Claims under the FCA, *id*. ¶ 187–94, and the second cause of action under the FATA is based on the same allegations as Count I under the FCA, *id*. ¶ 195–202.

[Relator's] employment."  *Id*. ¶ 207–08.

Relator filed her Complaint on April 22, 2013.  Doc. 1.  Defendants filed the present Motion to Dismiss on January 22, 2016.  Doc. 32.  Relator submitted her Response on February 10, 2016.  Doc. 39.  Defendants submitted their timely Reply on February 29, 2016.  Doc. 42.

## **THE FALSE CLAIMS ACT ("FCA")**

The FCA "covers all fraudulent attempts to cause the government to pay out sums of money."  *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotation omitted).  The FCA is relatively unique in that its qui tam provisions allow a private individual (termed a "relator") to bring such an action on the government's behalf.  *See* 31 U.S.C. § 3730(b).

Relator brings Counts I, II, and the first Count III under the provisions creating liability for "any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1).  The elements for a false claim under these provisions are "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."  *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006); *U.S. ex rel. New Mexico v. Deming Hosp. Corp.*, 992 F. Supp. 2d 1137, 1145 (D. N.M. 2013) (citing same).  With respect to the scienter requirement, "[a]lthough 'no proof of specific intent to defraud' is required, the relators must at least show that [the defendant] acted with 'reckless disregard of the truth or falsity of the information.' 31 U.S.C. § 3729(b)(1) (defining 'knowingly' as acting with 'actual knowledge of the information,' or with 'deliberate ignorance . .

. or . . . reckless disregard of the truth or falsity of the information')." *United States v. The Boeing Company*, 2016 WL 3244862, at *8 (10th Cir. June 13, 2016); *see also U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 945 n.12 (10th Cir. 2008) ("an aggravated form of gross negligence (i.e., reckless disregard) will satisfy the scienter requirement for an FCA violation").[4]

The Tenth Circuit distinguishes between "factually false" and "legally false" claims under the FCA. *See Connor*, 543 F.3d at 1217. A factual falsity claim stands where "the government payee has submitted an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Id*. A legal falsity claim alleges that the defendant "certifie[d] compliance with a statute or regulation *as a condition* to government payment, yet knowingly failed to comply with such statute or regulation." *Id*. The Supreme Court recently clarified that legally false certification claims may be express or implied. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). The Court held that an implied false certification theory is permissible "where two conditions are satisfied: First, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.* at 2001. Count I and both Counts III allege factual falsity claims. Count II alleges legal falsity claims.

---

4 The FATA similarly creates liability for a person who "knowingly present[s], or cause[s] to be presented, to an employee, officer or agent of the state or a political subdivision . . . a false or fraudulent claim for payment or approval." N.M.S.A. § 44-9-3(A)(1). "FATA was enacted in 2007 and tracks closely the longstanding federal False Claims Act (FCA)." *State ex rel. Foy v. Austin Capital Management, Ltd.*, 297 P.3d 357, 364 (N.M. Ct. App. 2012), *overruled on other grounds*, 355 P.3d 1 (N.M. 2015).

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted), *cert. denied*, 558 U.S. 1148 (2010).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

However, "FCA claims, which involve averments of fraud, are held to a higher standard." *U.S. ex rel. Lacy v. New Horizons, Inc.*, 349 Fed. Appx. 421, 424 (10th Cir. 2009); *see also U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield Utah*, 472 F.3d 702, 727 (10th Cir. 2006) ("Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the 'circumstances constituting fraud and mistake' that must be pled with particularity under Rule 9(b).") (quoted authority omitted). Rule 9(b) requires that "[i]n alleging

9

fraud . . . a party must state with particularity the circumstances constituting fraud." The Tenth Circuit has interpreted the particularity requirement under Rule 9(b), as applied to FCA claims, to mean that "a plaintiff [must] set forth the 'who, what, when, where and how' of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga*, 472 F.3d at 726 (quotations omitted); *see also U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).

## DISCUSSION

Relator takes the position that Rule 9(b) does not obligate her to allege specific false claims made by Defendants. Doc. 39 at 5. Because the Court rejects this argument, Counts I, II and both Counts III, alleging both factual and legal falsity claims, must be dismissed. Having dismissed all federal claims, the Court declines to exercise jurisdiction over the remaining state law retaliation claim under Count IV.

**I.      Relator's Factual Falsity Claims Must Be Dismissed For Lack of Particularity.**

Counts I and both Counts III claim that "[d]espite knowing of the falsity of those claims, the Defendants accepted, processed and paid those claims from Medicaid funds and funds obtained from other government funding sources." Doc. 1 ¶ 172; *see also id.* ¶¶ 188–89, 196. Defendants argue that because the Complaint "contains no allegations identifying any specific false claim that any of these Defendants submitted to the government," Doc. 32 at 4, Relator has failed to allege "the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Sikkenga*, 472 F.3d at 726; *U.S. ex rel. Lemmon*, 614 F.3d at 1171. *See* Doc. 32 at 5. Specifically, Defendants point out that the Complaint fails to:

"identify[] invoices or bills submitted by Defendants to state or federal government

10

>agencies; describ[e] what, if any, representations Defendants made to state or federal government agencies on those invoices; identify[] the amounts billed or nature of the billings (capitation payments, fee-for-service payments, etc.); or identify[] any dates on which invoices or bills were submitted to state or federal government agencies." Doc. 32 at 5.

Defendants therefore argue that although the Complaint is replete with allegations of fraud by Defendants' subcontractors, the Complaint fails to tie these allegations to "any specific claim *by Defendants to the government*." *Id*. (emphasis in original).

In response, Relator argues that the Complaint alleges "a pattern of behavior" that "manifested in multiple instances in relation to at least nine behavioral health providers," and that these general allegations comply with the heightened standard under Rule 9(b). Doc. 39 at 5. The Court disagrees and finds that in order to comply with Rule 9(b), Relator must allege the "who, what, when, where and how" with respect to specific false claims. *United States ex rel. Sikkenga*, 472 F.3d at 726; *U.S. ex rel. Lemmon*, 614 F.3d at 1171.

Relator cites *Lemmon* for the proposition that "claims under the FCA need only show the specifics of the scheme 'and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme.'" Doc. 39 at 5 (quoting *U.S. ex rel. Lemmon*, 614 F.3d at 1172). The Court does not agree with Relator's interpretation of *Lemmon*. The Tenth Circuit in *Lemmon* found that relators met their burden because they "provided the dates, numbers and amounts of [the defendant's] requests for payment under its contracts with the government, . . . [and alleged] that each request for payment submitted during the pertinent time was paid in full by the government." *Id*. at 1169. Of particular importance here, "[i]n pleading the *when*, Plaintiffs documented the dates on which specific violations took place and the dates on which payment requests were submitted." Id. at 1172 (italics in original, underline added). Therefore, because the Tenth Circuit found that relators alleged specific false claims,

11

this Court cannot rely on *Lemmon* in support of Relator's position that she is not required to allege specific false claims submitted by Defendants.

Relator argues that she nevertheless sufficiently alleges the "who, what, when, where, and how," in support of her factual falsity claims. However, none of Relator's arguments explicitly connect the factual details in the Complaint to specific false claims submitted by Defendants to the government. First, with regard to alleging "what" and "how" false claims occurred, Relator argues that the Complaint sufficiently alleges "that Defendants failed to investigate allegations of false claims . . . of which the Defendants were aware and failed to report . . . and then used those false claims to receive federal and state monies from the government to reimburse Defendants." Doc. 39 at 8. While the Complaint makes several detailed allegations of reports Defendants received regarding fraud committed by subcontractors, and while the Complaint further alleges that Defendants in multiple instances failed to pursue Relator's investigations of these reports, the Complaint does not sufficiently allege that "Defendants accepted, processed, and paid those false claims received from providers." *Id*. at 9. Although Relator lists several paragraphs in the Complaint in support of this claim, *id*., several of these allegations simply list "[t]he amount of Medicaid funds paid to this provider in reimbursement of false claims," Doc. 1 at ¶ 53, failing to allege specific instances in which false claims were made. *See, e.g.*, Doc. 1 at ¶¶ 53, 70, 76, 86, 101, 134, 160. The Court is unable to infer from an alleged dollar amount of funds paid that false claims were plausibly, let alone particularly submitted, as required under Rule 9(b).

With respect to "who" allegedly submitted false claims, Relator argues "Defendants United Healthcare Insurance Company, United Behavioral Health, Inc., and Optumhealth New Mexico's liability arises from the actions of the employees of their joint venture. Defendant UnitedHealth Group's liability arises from the actions of its employees assigned to Optum

Behavioral Health Solutions (OHBS), and from it having conspired with Defendant OHNM to violate the FCA and FATA." Doc. 39 at 7. These theories of liability nevertheless fail to allege who submitted false claims to the government. Relator cites various actions by employees of Defendants, but does not allege that any of them submitted false claims to the government. Doc. 32 at 8–9; Doc. 39 at 7; Doc. 42 at 4. Without any allegations concerning any particular Defendant or employee of any Defendant submitting false claims, the Complaint fails to satisfy the particularity requirement under Rule 9(b).

The Complaint also lacks any allegations of "when," or the specific dates on which Defendants submitted false claims. As explained above, the Court cannot accept Relator's interpretation of *Lemmon* as not requiring allegations of specific false claims, as the *Lemmon* Court relied on such allegations in finding that the complaint satisfied the particularity requirement. *U.S. ex rel. Lemmon*, 614 F.3d at 1172. Relator's response lists several paragraphs in the Complaint as identifying "with specificity the dates or approximate dates of Defendants actions in implementing their pattern of false claims submission." Doc. 39 at 10. These allegations contain different types of dates, including dates of alleged fraud committed by Defendants' subcontractors, the dates that Relator initiated investigations, and dates that Defendants' allegedly concealed non-compliance from government agencies; however, the Complaint does not mention any specific or even approximate dates of alleged false claims submitted by Defendants. *See, e.g.*, Doc. 1 ¶¶ 41, 44, 48, 52, 56, 57, 88, 91, 103, 104, 146, 149–51, 156–59, 183, 185. Without alleging any dates of specific false claims made by any Defendants, Relator fails to plead with particularity that Defendants submitted false claims with knowledge or reckless disregard for their falsity (or, in other words, that Defendants submitted claims after discovering fraud on the part of their subcontractors). As Defendants point out,

13

"Relator's allegations of knowledge arise from alleged after-the-fact tips and investigations, which does not support the knowing submission of a false claim," Doc. 42 at 5, unless Relator were to allege specific false claims submitted after these tips or investigations, which Relator has not done.

The Court acknowledges that the Complaint contains several allegations to the effect that Defendants were aware of false claims being submitted by subcontractors, aware of problems with their automated monitoring system, and that Defendants failed to act in response.  Doc. 1 ¶¶ 90, 95, 121–22.  However, Relator nevertheless fails to demonstrate how awareness of these potential problems sufficiently alleges that Defendants submitted claims with "reckless disregard of the truth or falsity of the information."  31 U.S.C. § 3729(b)(1).  These alleged conversations between Relator and her superiors, although potentially troubling, lack necessary contextual details in order to rise to the level of particularity sufficient to survive dismissal.  Without additional allegations of specific false claims made, these conversational anecdotes fail to allege that Defendants recklessly made false claims.

Having found that the Complaint fails to satisfy the particularity requirements under the FCA, FATA, and Rule 9(b), the Court declines to consider whether Count I and both Counts III are plausible under *Twombly* and *Iqbal*.  Because the Complaint fails to state what false claims were made, who made them, what they were made for, when they were made, and how they were made, Count I and both Counts III must be dismissed for lack of particularity.

## II.     Relator's Legal Falsity Claims Must Be Dismissed For Lack of Particularity.

Count II claims that Defendants "falsely certified that they and all of their subcontractors were in compliance with Medicaid and federal grant guidelines and that its edit system was

functional and working properly," and that these certifications "were a condition precedent to the Defendants receiving Medicaid funds under its contract with the Collaborative." Doc. 1 at ¶¶ 181, 163. Defendants argue, first, that because the Complaint "contains no specific allegations regarding express false certifications," specifically "which Defendant made certifications, to whom they were made, when they were made, or how often they were made," Relator's claim lacks particularity and must be dismissed. Doc. 32 at 7. Defendants also argue that Relator fails to state a claim for express false certification because "the Complaint contains no specific allegations supporting Relator's claim that the alleged certifications were a prerequisite of payment." *Id*.

In response, Relator argues that she has asserted both express and implied false certification claims in Count II, and a claim for false certification under FATA in the second Count III. Doc. 39 at 11 (citing *U.S. ex rel. King v. Behavioral Home Care, Inc.*, 346 P.3d 377, 384 (N.M. Ct. App. 2014) for its interpretation of "identical statutory language" in New Mexico's Medicaid Fraud Act). The sections of the Complaint cited in support of these claims contain allegations regarding Defendants' obligations under their contract with the Collaborative. *Id*. at 14-15, and Relator argues in her response that the regulations cited in the contract make compliance a "condition for receiving payment." *Id*. at 15 (citing 42 C.F.R. § 438.606).

However, Relator argues again that "a complaint need not identify specific claims for payment that are submitted to the government to comply with Rule 9(b)." *Id*. at 13 (citing *Lemmon*). Accordingly, Relator takes the position that "[s]ince the Defendants paid its subcontractors using funds it obtained from the state and federal governments . . . these allegations [that Defendants received Medicaid funds and paid their subcontractors for false claims] 'provide an adequate basis for a reasonable inference'" that false certifications were

15

made.  *Id*. at 17 (quoting *Lemmon*).  For the reasons discussed above, the Court rejects Relator's interpretation of *Lemmon* and finds that Relator must allege specific false claims in order to meet the particularity requirements of Rule 9(b).  Without alleging specific false claims, the Complaint fails to state that Defendants made false certifications, express or implied.  In particular, without alleging specific false certifications, the Complaint does not allege, as required under the FCA, that Defendants acted with "actual knowledge of the information," or with "deliberate ignorance . . . or . . . reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).  Therefore, because Relator's false certification claims fail to satisfy the particularity requirement under Rule 9(b), they must be dismissed.

### III. The Court Declines to Exercise Jurisdiction Over Relator's Whistleblower Retaliation Claim.

Count IV alleges that Relator "disclosed information to the New Mexico State government and law enforcement officials regarding the submission of false claims to the Medicaid and other federally and state funded programs by the Defendants and their subcontractors" and that "[i]n retaliation" for these acts, she was "threatened and harassed . . . and then terminated."  Doc. 1 ¶ 208; *see also id.* ¶¶ 71, 95, 149, 156, 158, 159.

Having dismissed all federal claims, the Court declines to exercise jurisdiction over Relator's remaining state law claim.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").  In *U.S. ex rel. New Mexico v. Deming Hosp. Corp.*, the court similarly declined to consider a remaining FATA claim after having dismissed FCA claims.  992, F. Supp. 2d 1137, 1165–66 (D. N.M. 2013).  The *Deming* court considered that although there is a provision under the FCA governing state law

claims arising from the same transaction or occurrence, 31 U.S.C. § 3732(b), this provision "only confers supplemental jurisdiction over state law claims; it does not 'federalize' those claims." *Id*. at 1166 (cited authority omitted).   Accordingly, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."   *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).   As in *Deming*, this Court similarly finds that Relator's claims do not depart from "the usual case."   *See Deming*, 992 F. Supp. 2d at 1166 (recognizing that under N.M.S.A. § 44-9-12(A) there is no statute of limitations for claims under the FATA). Because all federal claims have been dismissed, the Court declines to exercise jurisdiction over Relator's whistleblower retaliation claim under the FATA.

_____

## **CONCLUSION**

For the foregoing reasons, IT THEREFORE IS ORDERED that Defendants' Motion to Dismiss the Complaint and Memorandum in Support, filed January 22, 2016, [Doc. 32], is granted.   Counts I through IV are dismissed without prejudice.

Dated this 22nd day of September, 2016.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Maureen A. Sanders, et al.              Joshua Grabel, et al.
Sanders & Westbrook, P.C.           Lewis Roca Rothgerber Christie L.L.P.
*Attorneys for Relator/Qui Tam Plaintiff*     *Attorneys for Defendants*