# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

KAREN CLARK,

    Plaintiff,

vs.                                                                                              CIV No. 13-0372 MV/CG

UNITEDHEALTH GROUP, INC., et al.,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the *Motion to Compel Arbitration* (the "Motion" – *Doc. 97*), filed by Defendants UnitedHealth Group, Inc., and United Healthcare Insurance Company on October 31, 2016. The Court has also given due consideration to Plaintiff's *Response in Opposition to Defendants' Motion to Compel Arbitration* (*Doc. 100*), filed November 16, 2016, Defendants' *Reply in Support of Motion to Compel Arbitration* (*Doc. 104*), filed November 30, 2016, and Plaintiff's *Surreply to Defendants' Motion to Compel Arbitration* (*Doc. 131*), filed May 31, 2018.

On March 1, 2018, United States District Judge Martha Vazquez referred the Motion to United States Chief Magistrate Judge Carmen E. Garza for proposed findings and a recommended disposition. *Doc. 116*. On March 28, 2018, Judge Garza heard oral argument on the Motion, at which time the parties agreed to conduct a settlement conference prior to entry of her Proposed Findings and Recommended Disposition. *Doc. 121*. The settlement conference, held on May 11, 2018, was unsuccessful at reaching a negotiated resolution. *Doc. 128*. Because Judge Garza was privy to confidential information from both sides during the course of settlement negotiations,

she inquired whether the parties would object to the referral of the Motion to the undersigned. *Doc. 129.* The parties had no objection, so the presiding judge entered her Amended Order of Reference on May 16, 2018 that referred the Motion to the undersigned to conduct hearings, if warranted, and to perform any legal analysis required to recommend an ultimate disposition of the Motion.

Having reviewed the record, the briefing, and the relevant law, and listened to the recording of the parties' oral arguments, the undersigned now recommends that the Motion be denied**.**

**I.     Background**

This case arises from the termination of Plaintiff Karen Clark's ("Plaintiff's") employment by Defendant UnitedHealth Group, Inc. ("UHG"), a healthcare services provider. From October 10, 2011, to April 9, 2012, UHG employed Plaintiff as a Senior Investigator in a subdivision of UHG dedicated to investigating allegations of billing fraud and abuse. *Doc 93* at 4. In her *First Amended Complaint for Violation of § 44-9-11 NMSA and Retaliatory Discharge*, (*Doc. 93* – the "Amended Complaint"), Plaintiff alleges that her position required her to investigate and report suspected fraud, waste, and billing abuse, as well as violations of the False Claims Act, 31 U.S.C. § 3729, and the New Mexico Fraud Against Taxpayers Act, NMSA 1978, § 44-9-1 to -14 (2007, as amended through 2015). *Id.*

When she was first hired, Plaintiff agreed to UHG's Employment Arbitration Policy (the "Arbitration Agreement" or "Agreement"). *Doc. 97-1* at 4-11. In that Agreement, the parties committed to arbitrate all claims under any federal, state, or local statute or common law pertaining to employment discrimination, the terms and

conditions of employment, and termination of employment, including whistleblower and retaliatory discharge claims. *Id.* at 4. Under "Amendment or Termination of Arbitration Policy" (the "Amendment Clause"), UHG retained the right to amend, modify, or terminate the Agreement effective January 1st of any year, provided it had given at least thirty-days' notice of its intent to amend or terminate the Agreement and the substance of any amendment. *Id.* at 11. UHG was permitted to post notice on its internal website and could only amend, modify, or terminate the agreement on January 1. *Id.* The Agreement has not been modified since Plaintiff signed it. *Doc. 104* at 5 n.3. The Agreement also contains a severability clause, stating "[i]f any portion or provision of this [Agreement] is held to be void or unenforceable, the remainder of this [Agreement] will be enforceable and any part may be severed from the remainder, as appropriate." *Doc. 97-1* at 10.

During her employment, Plaintiff investigated and reported several behavioral health services providers to federal and state authorities. *Doc. 93* at 4-5. She alleges that she repeatedly uncovered evidence of fraud, abuse, and false claims but that her supervisors reprimanded her for doing so and instructed her to stop investigating and reporting her findings. *Id.* at 5-22. Despite directions not to do so, Plaintiff persisted. She contends that she was ultimately terminated in retaliation for such activities. *Id.* at 22-24.

Defendants moved to compel arbitration of Plaintiff's claims, arguing that they pertain to the termination of her employment and are therefore covered by the parties' Arbitration Agreement. *Doc. 97* at 1, 5. Defendants maintain that the Court must compel arbitration and stay this case pending its resolution. *Id.* at 6.

Plaintiff responds that the Agreement is invalid and unenforceable, because it was not supported by consideration and because it is both substantively and procedurally unconscionable. *Doc. 100* at 1; *Doc. 131*. First, she contends that the Amendment Clause, which permits Defendants to unilaterally amend or terminate the Agreement after an employee is fired, unreasonably favor the employer and renders UHG's promises therein illusory. *Doc. 100* at 3-4. Further, she contends that the circumstances surrounding her employment render the Agreement procedurally unconscionable. *Id.* at 9-10.

In response, Defendants submit, first, that the Arbitration Agreement was supported by two forms of consideration: (1) Defendants' obligation to arbitrate its own claims, and (2) their offer of at-will employment. *Doc. 104* at 1. Second, Defendants maintain that the Agreement is not so grossly unreasonable or unfair as to be unconscionable. *Id.* at 9-11. Finally, even if the Court finds the Amendment Clause unconscionable, Defendants suggest that the Court may sever that portion of the Agreement and enforce the balance. *Id.* at 11-12.

**II.     Analysis**

   A. <u>Whether the Agreement is Supported by Consideration</u>

In order to compel arbitration, the parties must have entered into a valid agreement to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The validity of an agreement to arbitrate depends on state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under New Mexico law, a valid agreement to arbitrate must be supported by an offer, an

4

acceptance, consideration, and mutual assent. *Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶ 28, 303 P.3d 814 (internal quotation and citation omitted).

Plaintiff contends that the Agreement was never valid because it was not supported by consideration. In particular, she contends the Agreement's Amendment Clause makes Defendants' promise to arbitrate illusory, as Defendants could unilaterally amend or terminate the Agreement after Plaintiff's termination. *Doc. 100* at 3-8.

A promise or return promise is insufficient consideration if that promise is illusory. Restatement (Second) of Contracts § 77 (1981). An illusory promise is one that "makes performance entirely optional." *Id.* For instance, in *Flemma v. Halliburton Energy Services*, the New Mexico Supreme Court found an employer's promise to arbitrate its own claims against an employee illusory where the employer retained the ability to unilaterally modify or terminate the arbitration agreement after an employee was terminated but before arbitration began. 2013-NMSC-022, ¶¶ 27, 32. Although the employer was required to provide notice before amending the arbitration agreement, the court found the notice requirement immaterial, because "terminated employees . . . would not receive advance notice of changes to the agreement." *Id.* ¶ 33.

Here, as in *Flemma*, Defendants reserved the right to unilaterally change the Arbitration Agreement after an employee was terminated but before a claim was filed. *Doc. 97-1* at 11. Because Defendants could so modify that agreement, their promise to arbitrate therefore was illusory and failed to constitute consideration under New Mexico law. *See Flemma*, 2013-NMSC-022, ¶ 32. Defendants' suggestion that the notice provision somehow rescued the Agreement from unenforceability is unavailing given the court's rationale in *Flemma*. *See* 2013-NMSC-022, ¶ 33.

5

The Court must now turn to a closer question: whether the promise of at-will employment constitutes valid consideration under New Mexico law. Here, Plaintiff signed the Arbitration Agreement in exchange for initial employment with UHG. She now maintains that an offer of at-will employment is illusory. Defendant relies upon the Court of Appeals decision in *Richards v. Allianz Life Insurance Company of North America*, 2003-NMCA-001, 62 P.3d 320, in support of its position that a new offer of at-will employment can constitute consideration for the parties' Arbitration Agreement.

In the context of a motion to compel arbitration, an insurance agent in *Richards* claimed that his "service agreement" with an insurance agency was not supported by consideration. *Id.* at ¶ 2. The agent had previously entered into multiple agreements with a former insurance company, Fidelity Union Life Insurance Company ("Fidelity"). Allianz Life Insurance Company ("Allianz") then purchased Fidelity and assumed all of the rights and obligations under its agreements with the agent. *Id.* at ¶ 3. Decades later, Allianz disseminated notices that it was terminating the earlier contracts with the agent. *Id.* at ¶ 4. However, it enclosed a new service agreement ("the 1996 agreement") containing an arbitration provision, which the agent signed. *Id.* at ¶ 5.

After the agent later sued Allianz, and Allianz moved to compel arbitration, the New Mexico Court of Appeals determined that the 1996 agreement between the parties was a substitution of the earlier agreements that the agent entered into with Fidelity. *Id.* at ¶ 10. And, most pertinent to the issues here, it determined that consideration for the 1996 agreement was "found in the continuation of the insurer/agent relationship." *Id.* at ¶ 20. In so holding, the court rejected the rationale of the lower court, which found that the 1996 agreement lacked consideration, and it explained that the lower court's

conclusion was "erroneously based on case law holding that a promise to do what one already must do does not constitute consideration." *Id.* at 325 (citing *Jaynes v. Strong-Thorne Mortuary, Inc.*, 954 P.2d 45 (N.M. 1998) and *Hale v. Brewster*, 467 P.2d 8, 11 (1970)). According to the New Mexico Court of Appeals, there was "no unfulfilled prior obligation" to the agent once the earlier agreements were terminated, and the "continuation of the relationship formed the requisite consideration." *Id.* at ¶ 20.

The New Mexico Court of Appeals again took up the issue of consideration in *Piano v. Premier Distributing Co.*, 2005-NMCA-018, 107 P.3d 11. There, an employee brought an action for wrongful termination of her at-will employment against her employer. During the course of that employment, her employer presented her with an arbitration agreement, on threat of termination. *Id.* at ¶ 2. The employee signed the agreement, but later maintained that it was unenforceable for lack of consideration. *Id.* at ¶¶ 2, 8. In support of its position that the arbitration agreement *was* supported by consideration, the employer argued that "in exchange for [the] [p]laintiff's promise to submit her disputes to binding arbitration it allowed her to retain her job." *Id.* at ¶ 8. But the court disagreed, reasoning as follows:

> Plaintiff was an at-will employee before she signed the Arbitration Agreement and she remained an at-will employee after she signed the Arbitration Agreement. The implied promise of continued at-will employment placed no constraints on Defendant's future conduct; its decision to continue [the] [p]laintiff's at-will employment was entirely discretionary. Therefore, this promise was illusory and not consideration for [the] [p]laintiff's promise to submit her claims to arbitration.

*Id.* (internal citations omitted).

The *Piano* court also explicitly rejected the employer's argument that *Richards* supported a determination that *continued* at-will employment constitutes consideration for the arbitration agreement. The court distinguished *Richards*, noting:

> In *Richards*, the employee had two existing contracts with the employer's predecessor which employer assumed. The employer then terminated those contracts, and the parties entered into a new contract which contained an arbitration clause. Since there was no dispute that the employer had the right to terminate the two pre-existing contracts, and did, the continuation of the relationship between the parties was consideration for the new contract.

*Id.* at ¶ 9 (internal citations omitted). The court emphasized that, in contrast to the employment relationship in *Richards*, the employment relationship in *Piano* "never changed." *Id.* On the other hand, it noted that the plaintiff in *Piano* was "an at-will employee before and after the Arbitration Agreement was signed." *Id.*

Notably, the court in *Richards* neglected to explore, at least expressly, the terms of the substituted insurance-agent contract at issue or to contrast them with the at-will employment agreement in *Piano*. While we know from the court's analysis in *Piano* that "the relationship between the parties was consideration for the new [agent] contract," the court did not specify, in *Richards*, that the relationship was purely at-will. *See generally Richards*, 2003-NMCA-001. Indeed, Plaintiff submits that the contract in *Richards* "was *not* an at-will contract." *Doc. 131* at 5 (emphasis added). While a concurring opinion by Judge Alarid in *Richards* suggests that the earlier contracts between the insurer and the agent may have contained "termination-at-will provisions," it says nothing of the terms in the later, operative contract. *See Richards*, 2003-NMCA-001, ¶ 47. Moreover, according to the majority opinion, even those earlier contracts contained a provision allowing for termination by either party with thirty, or later fifteen,

8

days written notice, distinguishing them from the typical at-will employment contract. *Id.* at ¶ 3. In short, the contractual relationship in *Richards* was unique and factually dissimilar to the relationship between Plaintiff and UHG.

As a result, neither *Piano* nor *Richards* directly resolve the question at issue here. Thus far, the New Mexico Court of Appeals has determined: 1) that *continued* at-will employment, without more, does *not* constitute consideration; 2) that an offer by an insurance agency to an insurance agent to continue a previous relationship through a substituted "service agreement" may constitute consideration. But New Mexico courts have *not* decided whether an offer of new at-will employment may constitute consideration for an arbitration agreement at the inception of the parties' employment relationship. Likewise, New Mexico courts have not weighed in on whether a promise of new at-will employment is an illusory promise.

Yet, because an employer can terminate an at-will employment relationship at any time, including immediately, an offer of at-will employment strikes this Court as a text-book illusory promise. It binds neither party to any future conduct. The Restatement (Second) of Contrasts instructs: "[w]here the apparent assurance of performance is illusory, it is not consideration for a return promise." Restatement (Second) of Contracts § 77, cmt. A, illus. 2 (1981). Citing this Restatement, the New Mexico Court of Appeals has reasoned that "[a] promise that puts no constraints on what a party may do, and in reality promises nothing, is an illusory promise." *Sisneros v. Citadel Broadcasting Co.*, 2006-NMCA-102, ¶ 31, 142 P.3d 34. In other words, a promise "under which a promisor expressly reserves to itself the right of immediate cancellation at any time is not consideration." 3 Williston on Contracts, § 7:7 (4th ed. 2018).

9

This fundamental principle of contract law would seem to hold true whether the promise is made at the inception of an at-will employment relationship or whether it is a promise of *continued* at-will employment made after that relationship is long-standing. Nevertheless, a number of courts have held that a promise of at-will employment by an employer serves as consideration for a promise made by the employee when the exchange of promises occurs at the inception of the employment relationship. Richard A. Lord, *The At-Will Relationship in the 21st Century: A Consideration of Consideration*, 58 Baylor L. Rev. 707, 726-27 (2006); *see also Wilmar, Inc. v. Corsillo*, 210 S.E.2d 427, 429-30 (N.C. Ct. App. 1974) ("It is generally held that the promise of new employment is valuable consideration and will support an otherwise valid covenant not to compete contained in the initial employment contract."). These courts have at times drawn a distinction between the enforceability of promises made at the inception of the at-will employment relationship and the enforceability of those made after that relationship has commenced, determining that only the latter require some additional consideration.[1] *See, e.g., Kadis v. Britt*, 29 S.E.2d 543, 548 (N.C. 1944); *George W. Kistler, Inc. v. O'Brien*, 347 A.2d 311, 314 (Pa. 1975); *Poole v. Incentives Unlimited, Inc.,* 548 S.E.2d 207, 209 (S.C. 2001); *Schneller v. Hayes*, 28 P.2d 273, 274-75 (Wash. 1934). Two judges in this District have made a similar distinction.

In *Parrish v. Valero Retail Holdings, Inc.*, 727 F. Supp. 2d 1266 (D.N.M. 2010), an employee challenged the validity of an arbitration agreement, which the employer

---

[1] Other courts have determined that even *continued* at-will employment, and the forbearance on the part of an at-will employer from discharging an at-will employee, may serve as consideration to support a new agreement between the parties. *See, e.g., Lake Land Emp. Grp. Of Akron, LLC v. Columber*, 804 N.E.2d 27, 32 (Ohio 2004).

10

required her to sign as part of her job application and as a condition of her at-will employment. *Id.* at 1269. Judge Browning of this District distinguished the New Mexico Court of Appeal's decision in *Piano*, explaining that an offer of *continued* at-will employment, as was at issue in *Piano*, is "fundamentally different" than an offer for *new* at-will employment. *Id.* at 1278. He reasoned that the employer's "offer of employment," albeit *at-will* employment, was itself proper consideration for the arbitration agreement at issue in *Parrish*. *Id.*

Similarly, in *Boyd v. Springleaf Financial Services, Inc.*, No. 16cv0814 WPL/KK, 2016 WL 5946912 (D.N.M. Sept. 9, 2016), Judge Lynch of this District distinguished *new* at-will employment from *continued* at-will employment, concluding that the holding in *Piano* did not extend to the arbitration agreement in *Boyd*. *Id.* at *6. He reasoned that unlike the plaintiff in *Piano*, who entered into an arbitration agreement two years after commencing employment, the plaintiff in Boyd signed the arbitration agreement one day after her hire date. *Id.* He explained that "[a]t best, it stretches credulity to believe [the plaintiff's] argument that she was continuing at-will employment by signing the [arbitration agreement]." *Id.* Thus, Judge Lynch categorized the parties' relationship as *new* at-will employment rather than *continued* at-will employment and found that the employment relationship "placed adequate constraints on [the employer's] future conduct to render the agreement supported by consideration and not illusory. *Id.*

In the undersigned's view, however, the timing of a promise of at-will employment – whether made at the inception of the employment relationship or after it is already underway – is immaterial to the illusory nature of that promise. By definition, offers of new *and* continued at-will employment fail to place constraints on an offering employer's

11

actions, leaving the employers' decisions to commence or continue employment entirely discretionary. The Court is hesitant to carve out an exception to ordinary principles of contract law without straightforward direction from New Mexico courts requiring it to do so. If the court's rationale in *Piano* is any indication, New Mexico courts are not likely to except offers of new at-will employment from the requirement that consideration be non-illusory. More likely, they would follow rationale similar to that set forth in *Jimenez v. Cintas Corporation*, 475 S.W. 3d 679 (Mo. Ct. App. E.D. 2015).

In *Jimenez*, an employer, like UHG here, argued that there were two separate types of consideration that supported the parties' arbitration agreement: its offer of "new" or "future" at-will employment and the parties' mutual promises to arbitrate. *Id.* at 683. As to the offer of new at-will employment, the employee maintained that because the parties' employment relationship was "at-will," the arbitration agreement was devoid of consideration and invalid. *Id.* Applying Missouri law, the court sided with the employee, holding that "neither [the employee's] at will employment nor the arbitration provision provides consideration to support a contractual obligation on the part of [the employee] to arbitrate disputes with [her employer]." *Id.* The court clarified that "in Missouri, a promise of at-will employment does not qualify as consideration, regardless of whether it is characterized as 'new,' 'future,' or 'continued' at-will employment." *Id.* at 684.

To hold that a promise of *new* at-will employment constitutes consideration, where a promise of *continued* at-employment does not, would invoke a fallacy. After all, an employer who offers new at-will employment could simply change his mind and immediately retract the employment offer. Or, he could employ the new employee for a

12

short time and then terminate her at his whim. And neither action would breach his promise for at-will employment.

This is not to say that an at-will employment contract could never include an enforceable arbitration agreement.[2] Rather, at-will relationships are subject to arbitration agreements whenever another form of consideration supports the employment agreement. Clearly such consideration exists when the parties mutually agree to arbitrate their disputes in valid and enforceable arbitration agreements – in other words, arbitration agreements not dependent on the at-will employment relationship alone for consideration. *See, e.g., Sisneros v. Citadel Broadcasting Co.*, 2006-NMCA-102, ¶ 1, 142 P.3d 34 (reasoning that "if the parties in fact agreed to arbitrate their disputes, their agreement was not illusory as a matter of law"). But, as the court reasoned in *Piano*, discretionary, illusory promises of at-will employment cannot constitute consideration for a plaintiff's promise to submit claims to arbitration. *Piano*, 205-NMCA-018, ¶ 8.

For all of these reasons, the undersigned concludes that the Arbitration Agreement is *not* supported by consideration and is therefore unenforceable. The Court recommends that Defendants' Motion to Compel Arbitration be denied on that basis.

### B. Whether the Agreement is Unconscionable

Alternatively, if the presiding judge determines that the Arbitration Agreement *was* supported by consideration, she must then consider whether it is otherwise unenforceable on the basis of substantive or procedurally unconscionability. Plaintiff

---

[2] The possibility of such a result seems of great concern for Judge Browning in the *Parrish* case. There, he observed that if the plaintiff's argument was sustained, "at-will employment contracts in New Mexico could never include arbitration agreements, because the offer of at-will employment is not a sufficient promise to constitute consideration." *Parrish*, 727 F. Supp. 2d. at 1277. This observation, however, ignores that other promises, such as payment of moving, education or licensure expenses, could serve as consideration supporting the enforcement of an arbitration provision in the at-will offer of employment.

13

highlights the Amendment Clause as unconscionable, arguing that it is unreasonably beneficial to Defendants. *Doc. 100* at 9. Defendants deny that the Agreement is either substantively or procedurally unconscionable. *Doc. 104* at 9-11.

Valid arbitration agreements may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Unconscionability is an equitable contract defense, "rooted in public policy, which allows a court to render unenforceable an agreement that is unreasonably favorable to one party while precluding meaningful choice of the other party." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 21, 146 N.M. 256, 208 P.3d 901. Procedural unconscionability "examines the particular factual circumstances surrounding the formation of the contract," including the parties' relative bargaining strength, the parties' "sophistication," and the extent to which either party felt free to accept or decline the contract. *Id.* at ¶ 23. Substantive unconscionability "concerns the legality and fairness of the contract terms themselves." *Id.* at ¶ 22. Whether a contract is substantively unreasonable depends on whether the terms are commercially reasonable and fair, what the terms' purposes and effects are, whether the terms are one-sided, and other public policy concerns. *Id.*

Here, *Flemma* is dispositive. As discussed, the arbitration agreement in *Flemma* allowed the employer to unilaterally amend or terminate the agreement after an employee was fired but before the employee initiated arbitration. 2013-NMSC-022, ¶ 23. The New Mexico Supreme Court held that the provision was substantively unconscionable because it was unreasonably one-sided in the employer's favor. *Id.* The court focused on the fact that the employer could amend the agreement after an employee was terminated – at the time the claim accrues – but before the employee

14

filed a claim, which effectively allowed the employer to "change the rules of the game just before it starts." *Id.* at ¶ 24; *see id.* at ¶ 32. The court distinguished an arbitration agreement that limited any amendment's effect on previously accrued claims. *Id.* at ¶ 31.

In this case, the Amendment Clause gives UHG the right to amend, modify, and terminate the policy on January 1 after providing at least thirty-days' notice. *Doc. 97-1* at 11. The clause does not limit any amendment's effect on previously accrued claims. Instead, the Agreement states that all arbitrations shall be conducted in accordance with whatever Agreement is in effect when an arbitration claim is initiated. *Id.*

The Agreement and Amendment Clause are indistinguishable from those at issue in *Flemma*. Although UHG may only amend the Agreement effective January 1, this limitation does not change the fact that UHG may unilaterally amend the Agreement after an employee is fired. Further, the Agreement explicitly provides that arbitration will be governed by the Agreement in place when arbitration is initiated, not when an employee is terminated. *Doc. 97-1* at 11. This means that UHG, like the employer in *Flemma*, may terminate an employee and amend the Agreement before arbitration begins, effectively allowing it to "change the rules of the game just before it starts." *See Flemma*, 2013-NMSC-022, ¶ 24.

Defendants argue *Flemma* is factually distinguishable because the employer in that case could amend the agreement at any time with ten-days' notice, while UHG may only amend the agreement effective January 1. *Doc. 104* at 7-8. This is a distinction without a difference. The defect *Flemma* identified was the employer's ability to unilaterally amend the arbitration agreement after an employee was fired – not the

15

ability to amend it on a mere ten-days' notice. *Flemma*, 2013-NMSC-022, ¶¶ 24, 31-33; *see Sisneros*, 2006-NMCA-102, ¶¶ 33-34 (distinguishing amendment clauses that restricted employer's ability to amend before and after a claim had accrued).

Defendants also argue, once again, that the Court's conclusion contradicts Judge's Browning's decision in *Parrish*. Contrary to Defendants' assertion, Judge Browning did not address unconscionability in *Parrish*. *See Parrish*, 727 F. Supp. 2d at 1277-81. Moreover, *Parrish* was decided before *Flemma*, and New Mexico law is controlling on this issue. *See First Options of Chicago, Inc.*, 514 U.S. at 944 (providing state contract law governs whether a contract was formed). The Court must therefore follow *Flemma* notwithstanding any conflict with *Parrish*, and it therefore concludes that the Agreement, in particular the Amendment Clause, is substantively unconscionable.

### C. *Whether the Amendment Clause is Severable*

Finally, Defendants argue the Amendment Clause is severable from the rest of the Agreement. *Doc. 104* at 11-12. They suggest that the Court sever the Amendment Clause, enforce the remainder of the Agreement, and compel arbitration. *Id.* At oral argument, Plaintiff asserted that severance would be inappropriate because the Agreement is not supported by consideration. Having determined herein that the Agreement is, in fact, unsupported by consideration, the undersigned agrees with Plaintiff's position. Nevertheless, should the presiding judge disagree and conclude that the Arbitration Agreement is supported by consideration but is unconscionable, she must engage in a severability analysis.

When a contract term is unconscionable, the Court may choose: to limit the application of the unconscionable term, to sever the term and enforce the remainder of

16

the contract, or to refuse to enforce any part of the contract. *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 40, 288 P.3d 888. In deciding whether to sever a contract term, "[t]he critical determination is whether the term is 'central to the arbitration scheme and cannot be severed without substantially altering the method of dispute resolution contractually agreed to by the parties.'" *Id.* (quoting *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 56, 150 N.M. 398, 259 P.3d 803).

In *Clay*, the New Mexico Court of Appeals severed a so-called "escape hatch" clause from an arbitration agreement. The clause allowed either party to appeal an arbitration award above $100,000, which the court found unconscionable because only the employer was likely to invoke clause. *Clay*, 2012-NMCA-102, ¶¶ 34-35. Although the clause was unconscionable, it was severable because it affected post-arbitration rights, rather than the arbitration scheme itself. *Id.* at ¶ 41; *see also Padilla v. State Farm Mut. Auto Ins. Co.*, 2003-NMSC-011, ¶ 18, 133 N.M. 661, 68 P.3d 901 (severing appeal clause from arbitration agreement).

By contrast, the New Mexico Supreme Court has declined to sever clauses that define the parties' arbitration rights. For instance, in *Cordova v. World Finance Corporation of New Mexico*, 2009-NMSC-021, ¶ 4, 146 N.M. 256, 208 P.3d 901, the court considered an arbitration clause that forced the plaintiff to arbitrate all claims but allowed the defendant to seek certain judicial remedies. The court held the provision substantively unconscionable because it unreasonably favored the defendant. *Id.* at ¶ 32. Further, because the clause "involve[d] the arbitration scheme itself," the entire arbitration agreement had to be invalidated. *Id.* at ¶ 40. The court explained that it was "reluctant to try to draft an arbitration agreement the parties did not agree on" and

sought to "avoid a type of judicial surgery." *Id.* Two years later, the New Mexico Supreme Court followed *Cordova* and struck an entire arbitration agreement that unfairly permitted only one party to seek judicial remedies. *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 56, 150 N.M. 398, 259 P.3d 803.

Here, the Amendment Clause allows UHG to unilaterally modify or end the Agreement. But, it does not affect the arbitration scheme by allocating certain rights to Plaintiff and others to UHG as in *Cordova* and *Rivera*. Additionally, the Amendment Clause does not affect "the method of dispute resolution contractually agreed to by parties" as in *Cordova* and *Rivera*. *Clay*, 2012-NMCA-102, ¶ 40. Further, the Agreement itself provides that if any provision is void or unenforceable, it should be severed. *Doc. 97-1* at 10.

Accordingly, in the event that the presiding judge disagrees with the undersigned's conclusion on the issue of consideration, determining that the Arbitration Agreement *is* supported by consideration, she should find the Amendment Clause to be severable, compel arbitration, and stay proceedings pending the arbitration's resolution.

### III.   Conclusion

For the foregoing reasons, the Court finds that the parties entered into an unenforceable agreement to arbitrate, given that the agreement was not supported by consideration. The Court therefore **RECOMMENDS** that Defendants' *Motion to Compel Arbitration*, (*Doc. 97*), be **DENIED**.

_____
THE HONORABLE KAREN B. MOLZEN
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**